Robert B. ALEXANDER, et al., Plaintiffs,

v.

NATIONAL FARMERS' ORGANIZA-
TION, et al., Defendants and
Counterclaim Plaintiffs,

v.

ASSOCIATED MILK PRODUCERS,
INC., et al., Counterclaim
Defendants.

No. 19191–A–1.

United States District Court,
W.D. Missouri, W.D.

Sept. 16, 1986.

David A. Donohoe, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., for National Farmers' Organization, defendant and counterclaim plaintifts.

Donald W. Barnes, Arent, Fox, Kintner, Plotkin & Kahn and Colvin A. Peterson, Jr., Watson, Ess, Marshall & Enggas, Kansas City, Mo., for Associated Milk Producers, Inc., counterclaim defendants.

Sydney Berde, Berde & Hagstrom, P.A., St. Paul, Minn., for Central Milk Producers Co-op, counterclaim defendants.

George A. Leonard, Shughart, Thomson & Kilroy, and Major W. Park, Jr., Gage & Tucker, Kansas City, Mo., for Mid-America Dairymen, Inc., counterclaim defendants.

## MEMORANDUM AND ORDER DIRECTING ENTRY OF FINAL JUDGMENT AND DECREE

JOHN W. OLIVER, Senior District Judge.

### I.

Order (5) entered June 17, 1986 directed counsel to promptly schedule a conference for the purpose of agreeing on the forms of final judgments that should be entered on remand in order that appropriate and immediate appeals could be noticed in regard to any of the orders entered on July 5, 1985 and on June 17, 1986. *See* 637 F.Supp. 1487 at 1516–17. That order provided that if counsel were able to reach agreement, their proposed forms of final judgment should be presented to the Court for approval on or before June 30, 1986.

Order (5) also provided that: "In the event counsel are not able to reach full agreement, each party shall separately prepare, serve, and file their proposed forms of final judgment and their respective proposed orders together with a short statement in support of their respective positions, on or before June 30, 1986." Counsel requested and the Court granted an extension of the June 30, 1986 deadline until August 4, 1986.

The Court received separate letters dated August 4, 1986 from opposing counsel, both of which advised that counsel had not been able to reach agreement. Both letters enclosed separate proposed forms of a final judgment and forms of an injunction. Neither side, however, filed "a short statement in support of their respective positions," as directed in Order (5).

Statements in support were eventually filed pursuant to an agreed time schedule, the last filing being received on September 5, 1986. We have given priority attention to the filings of the parties, consistent with our earlier scheduled commitments to other cases on the docket, and will direct the Clerk to enter a final judgment and decree pursuant to Fed.R.Civ.P. 58.

### II.

The parties' disagreement centered on the form of the injunction rather than on the form of the final judgment. NFO's August 4, 1986 letter accurately stated that there were "substantial and substantive differences between the two sides" only in regard to "the extent and character of the injunction that the Court should enter on the sham litigation point." That letter pointed out that in regard to the final judgment, as distinguished from the injunction, the differences between the parties were "essentially questions of appropriate form" and that "[f]ive out of NFO's six proposed provisions essentially parallel provisions proposed by the counterclaim defendants."

Both sides proposed particular paragraphs to be included in the final judgment that would, in effect, paraphrase findings of fact and conclusions of law made both by the Court of Appeals and by this Court. It is not necessary that the Court include the paragraphs proposed by the parties because the Court of Appeals' opinion speaks for itself, and because we have expressly incorporated by reference in the final judgment and decree all findings of fact and conclusions of law that have been made by this Court following remand.

The final judgment includes the substance of all six paragraphs proposed for inclusion by NFO and the substance of all fourteen paragraphs proposed by counterclaim defendants, excepting only paragraphs 2, 3, 5, 6, and 7, all of which paraphrase portions of what this Court has heretofore stated of record.

We turn now to the form of injunction about which the parties are in substantial dispute.

## III.

"Issue No. 7—Injunctive Relief" presented the question on remand of what, if any, injunctive relief NFO may be entitled to under the circumstances of this case. 614 F.Supp. 745 at 799. The form of the proposed injunction attached to NFO's October 11, 1983 post-remand motion for injunctive relief was in substantially different form than the form of NFO's presently proposed injunction forwarded in NFO's August 4, 1986 letter.

For reasons stated in detail in regard to "Issue No. 7—Injunctive Relief," *see* 614 F.Supp. 799 to 808, we rejected the form of the injunction proposed by NFO in its October 11, 1983 motion and entered the following orders:

> ORDERED (1) that NFO is entitled to an injunction which will specifically prohibit the initiation or maintenance of sham litigation and threats of litigation against potential buyers of NFO milk. It is further
>
> ORDERED (2) that NFO is not entitled to any further equitable relief other than that stated in Order (1) under the factual circumstances and applicable principles of equity. It is further
>
> ORDERED (3) that appropriate further proceedings will later be directed in regard to how the form of injunction shall be settled.

*Id.* at 808.

Those orders were entered in light of our detailed discussion of the scope of the injunction to which we concluded NFO was entitled under the Court of Appeals' decision. Order (3), of course, expressed our confidence that counsel would be able to agree on the form of the limited injunction

that would be granted. Because that expectation has not been realized, it is necessary that we discuss NFO's post-remand position in regard to injunctive relief in some detail.

## IV.

NFO's October 11, 1983 proposed form of injunction was eleven pages long. Paragraph II(1) and Paragraph II(2)(a) of that proposed injunction were the only paragraphs proposed by NFO to prohibit sham litigation.[1] NFO did not mention Paragraph II(2)(a) in its October 11, 1983 brief in support of the form of injunction it proposed immediately after remand. NFO's brief recognized, however, that Paragraph II(1) was "likely to be truly controversial" for the reason such a provision "may be said to curtail First Amendment rights that defendants would otherwise possess." (NFO's October 11, 1983 brief, p. 8). NFO directed attention to *National Society of Professional Engineers v. United States,* 435 U.S. 679, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978), to support the language it proposed in Paragraph II(1), stating that "all three defendants overtly engaged in unlawful *sham* litigation or threats of litigation."[2] *Id.* (Emphasis added).

The difficulty with NFO's Paragraph II(1) and Paragraph II(2)(a) as originally proposed in 1983 and with the provisions proposed in Paragraph II of its currently proposed form of injunction is that none of those proposed paragraphs so much as mention *sham* litigation. It was for that reason that we stated in our July 5, 1985 memorandum opinion that while an injunction against "sham litigation" would be en-

---

**1.** Those portions of Paragraph II proposed that the defendants be enjoined from:

"(1) Asserting or threatening or attempting to assert any claim or right of payment against any purchaser of milk based in whole or in part upon the contention that such purchaser is buying or contemplating buying milk from or through The National Farmers' Organization, Inc. (NFO) as to which any of the defendants claim marketing rights.

(2) Discriminating, threatening or attempting to discriminate against, or harassing in any

manner any purchaser or potential purchaser of milk who is buying or contemplating buying milk from or through NFO. Such prohibited conduct shall include, but not be limited to: (a) suggesting or stating that the purchaser may or will become involved in litigation."

**2.** On page 13 of the same brief, NFO argued that one "particularly important omission [of the consent decrees] is the failure of the decrees to prohibit *sham* litigation and threats of litigation against NFO's customers." (Emphasis added).

tered "in the form as generally stated in paragraphs II(1) and II(2)(a) of [NFO's] proposed injunction," such an injunction would be worded in "much more direct language" to make clear that the "injunction ... to be granted shall be limited to a prohibition against the institution of threatened *sham* litigation." 614 F.Supp. at 802. (Emphasis added).

■ We believed then and we believe now that the injunction should include specific language that states that the prohibition is directed against sham litigation. For the Court of Appeals made clear, at least to this Court, that the findings of fact it made in regard to the litigation filed by the counterclaim defendants against persons who sold milk to NFO, as distinguished from their litigation against NFO, were made in light of what the Court of Appeals considered to be sham, as distinguished from legitimate, litigation.

The Court of Appeals stated that the "controlling legal principle" to be applied to the facts found by it was clear. The Court of Appeals concluded that "[r]esort to judicial processes is exempt from antitrust attack under the *Noerr-Pennington* doctrine, unless it may be characterized as a *sham* cover for what is really just an attempt to directly interfere with the business relations of a competitor." 687 F.2d 1173 at 1200.[3] (Emphasis added).

■ NFO did not propose any provision in its October 11, 1983 proposed injunction that was in any way similar to the notification provisions stated in Paragraph III of its presently proposed injunction. We are satisfied, however, that the substance of NFO's currently proposed Paragraph III should be included in the injunction to be issued. If that new provision proves to be either ineffective or unduly burdensome, either side may move for modification.

## V.

■ The Court of Appeals emphasized that the buyers of NFO milk should not be made parties to litigation that the counterclaim defendants might bring in regard to membership disputes. For that court concluded that "[a]ny legitimate claims as to unlawful membership 'raiding,' however, could be fully pursued and vindicated in direct actions against NFO." The Court of Appeals also suggested that the "co-ops might also have sought specific performance of their marketing contracts" in direct actions against the producers of the milk. *Id.* It recognized that "[t]here may be circumstances in which actions against a competitor's customers are in good faith...." *Id.*

The injunction to be issued will therefore direct that future litigation based on alleged unlawful membership "raiding" shall be maintained in direct actions against NFO. It will also include a provision that will permit the counterclaim defendants to maintain good faith actions to recover payments for the purchase of milk.

We also believe that the duration of the injunction should be for a shorter period of time than that proposed by NFO and for a longer period of time than that suggested by the counterclaim defendants. We are satisfied that the substance of the compliance procedures proposed by NFO in Paragraph IV its October 11, 1983 proposed injunction are adequate under the circumstances of this case and, with some modification, will be included in the injunction to be issued.

*Professional Engineers*, upon which NFO relied in its October 11, 1983 supporting brief states that the "standard against which the order must be judged is whether the relief represents a reasonable method of eliminating the consequences of the illegal conduct." 435 U.S. at 698, 98 S.Ct. at 1368. That case also approved the Court of Appeals' observation that if the passage of time establishes that a broader decree is necessary to prevent the prohibited action, the plaintiff in an antitrust action "may

---

**3.** The Court of Appeals found and concluded that: "Here, the actions directly against NFO come within the exemption, but the conduct directed toward NFO's customers clearly constitutes bad faith, unlawful harassment." *Id.*

move the district court for a modification of the decree." *Id.* at 699, 98 S.Ct. at 1369.

### VI.

According, pursuant to Fed.R.Civ.P. 58, it is

ORDERED that the Clerk set forth on a separate document and enter the Final Judgment and Decree attached hereto in the above entitled case.

## APPENDIX A

## INJUNCTION

### I.

The provisions of this Injunction shall apply to counterclaim defendants Associated Milk Producers, Inc. (AMPI), Mid-America Dairymen, Inc. (Mid-Am), Central Milk Producers Cooperative (CMPC) (hereinafter defendants), and to each of their directors, officers, agents, employees, subsidiaries, successors, assigns and their subsidiaries, and to all persons in active concert or participation with any of them who receive actual notice of this order by personal service or otherwise.

### II.

Defendants, acting individually or in concert, combination, or conspiracy with any other persons, are hereby enjoined and restrained from directly or indirectly:

(1) Asserting or threatening to assert; instituting, supporting in any way, engaging in, or maintaining sham litigation in any court, state or federal agency, or before any other tribunal against any purchaser or potential purchaser of raw milk, for the purpose of preventing or interfering in any manner with the purchasing decisions of any such actual or potential purchaser who is buying, is contemplating buying or has bought raw milk from or through the National Farmers' Organization, Inc. (hereinafter NFO).

(2) Threatening, stating or in any manner suggesting to any actual or potential purchaser of raw milk that the purchaser may or will become involved in litigation by reason of the fact that such actual or potential purchaser of raw milk is buying, is contemplating buying or has bought raw milk from or through NFO.

(3) Defendants shall institute any and all litigation based upon any claim that defendants, or any of them, have membership or marketing rights with respect to any dairy farmer or farmers, which rights are assertedly superior to the membership or marketing rights of NFO with respect to the same dairy farmer or farmers in a direct action against NFO. Such litigation shall not name any actual or potential purchaser of raw milk as a party to such litigation without leave of Court being first obtained.

(4) This Injunction does not prohibit defendants from (a) instituting and maintaining, in good faith, actions for specific performance of their marketing contracts with sellers of raw milk or (b) instituting and maintaining, in good faith, actions which assert a particular defendant's right of payment against a purchaser of raw milk.

### III.

(1) Defendants are hereby ordered to provide to NFO, or its designated agents: (a) prior written notification at least seven (7) business days in advance of the initiation, directly or indirectly, of any litigation by defendants, or any of them, in any court, state or federal agency or any other tribunal against any actual or potential purchaser of raw milk in the states of Texas, Kansas, Missouri, Nebraska, Minnesota, Illinois, Arkansas, Wisconsin, Oklahoma, or Iowa for any purpose whatsoever; (b) written notification within no more than three (3) business days after defendants have (i) asserted or threatened to assert any claim or right of payment against any actual or potential purchaser of raw milk for any purpose whatsoever; (ii) threatened to initiate, institute, support in any way, engage in, or maintain litigation against any actual or potential purchaser of raw milk for any purpose whatsoever; and/or (iii) threatened, stated or in any manner

suggested to any actual or potential purchaser of raw milk that the purchaser may or will become involved in litigation.

(2) NFO shall, within ten (10) days after this Injunction becomes final, advise each of the defendants, in writing, the name of the person to whom the notifications provided in this paragraph are to be provided. A copy of that designation shall be filed in this case with the Clerk of this Court. NFO shall promptly notify each defendant of any change in the designation and shall file a notice of such change in this case with the Clerk of the Court.

(3) For purposes of subsection (1)(a) such prior notification shall be accompanied by copies of any complaint which a particular defendant intends to file, copies of all relevant pre-complaint correspondence between the defendants herein and the prospective defendant(s) in the contemplated litigation, a summary of any relevant pre-complaint oral communications between the defendants herein and the said prospective defendant(s) and copies of all documents assertedly evidencing a basis for bringing the action.

For purpose of subsection (b) of paragraph (1) above, such notification shall include a statement of the basis of any such claim or threatened litigation, the date(s) and content of any such communications, and the identity and position of the person(s) involved in any such communications.

(4) NFO shall, within seven (7) business days after receipt of a notification as above provided, (a) advise the particular defendant or defendants whether it considers the anticipated litigation or action stated in the notification to be in violation of this Injunction; or (b) advise the particular defendant or defendants that it will make an appropriate response to the notification within an additional period of time, not to exceed seven (7) additional business days.

The failure of NFO to state within the periods of time provided that it considers the anticipated litigation or action stated in a particular notification to be a violation of this Injunction shall bar NFO from making any later claim that such litigation or action did constitute a violation of this Injunction. NFO and the particular defendant or defendants may agree in writing that NFO may have a reasonable extension of time beyond the second seven (7) day period within which it shall respond to a particular notification.

(5) NFO shall attach copies of all documentation furnished by defendants pursuant to this Injunction, together with NFO's response to any notification, to any application for any order to show cause or any other pleading that NFO may file in this Court in connection with the enforcement of this Injunction.

### IV.

(1) Defendants are hereby required to file with this Court, with a copy served upon NFO, annually for a period of five (5) years on the anniversary of the date this Injunction becomes final, a report setting forth the steps each has undertaken to comply with the terms of this Injunction. This Injunction will expire on the fifth anniversary of the date this Injunction becomes final, provided the reports show compliance, unless the duration of this Injunction be extended by an amendment or modification extending the duration for an additional period of time, not to exceed an additional five (5) years.

(2) Defendants are hereby required to mail or furnish within ninety (90) days after this Injunction becomes final, a copy of this Injunction to each of its directors, officers, and employees, and to file with this Court, within 150 days, with a copy served upon NFO, an affidavit setting forth the fact and manner of compliance with this paragraph.

(3) Defendants shall maintain and not destroy copies of all documents related to the matters covered by this Injunction and shall make the same promptly available for inspection by NFO upon request.

(4) Jurisdiction is retained by this Court for the purpose of enabling any of the parties to this Injunction to apply to this

Court at any time for further orders and direction as may be necessary or appropriate for the construction or carrying out of this Injunction, for the amendment or modification of any of the provisions hereof, for the enforcement of compliance therewith, and for the punishment of violations thereof.

The Court expressly states that it reserves jurisdiction to extend the duration of this Injunction for an additional five-year period beyond the five-year period provided herein, by an appropriate amendment or modification made after appropriate notice and hearing and for good cause shown.

### FINAL JUDGMENT AND DECREE

This action came on for hearing before the Honorable John W. Oliver, United States Senior District Judge, presiding, on the issues presented on the remand of this action from the Court of Appeals for the Eighth Circuit, reported at 687 F.2d 1173 (8th Cir.1982), the parties having been afforded the opportunity to adduce new or additional evidence on the issues remanded to this Court and declining to do so, and decisions having been duly rendered on the evidence adduced at the trial of this action in the Court's Memorandum Opinion, Findings of Fact, and Conclusions of Law on Remand on July 5, 1985, reported at 614 F.Supp. 745 (W.D.Mo.1985), and in the Court's Memorandum and Orders Directing Further Proceedings on June 17, 1986, reported at 637 F.Supp. 1487 (W.D.Mo.1986), all of which are incorporated in this final judgment and decree by this reference.

IT IS ORDERED, ADJUDGED, AND DECREED that:

1. NFO take nothing in that it is not entitled to recover any damages for the reasons that have been heretofore fully stated of record.

2. NFO is entitled to injunctive relief in the form contained in Appendix A attached to this Final Judgment and Decree and incorporated herein by this reference.

3. The NFO class counterclaim motion for certification of the NFO Dairy Farmer class filed September 1, 1983 should be and the same is hereby denied.

4. NFO's motion for sanctions against AMPI under Rule 37, Fed.R.Civ.P., should be and the same is hereby granted and sanctions in the amount of $175,000.00 are hereby imposed in favor of NFO and against AMPI.

5. AMPI's motion for sanctions against NFO should be and the same is hereby granted and sanctions in the amount of $34,918.37 are hereby imposed in favor of AMPI and against NFO.

6. Counterclaim defendants CMPC, Mid-Am and AMPI shall pay interest at the rate of 8.72% on each defendant's respective portions of the Court of Appeals' award of $163,968.15 for attorneys' fees and costs to NFO from May 31, 1983, the date this Court entered judgment in accordance with the mandate of the Court of Appeals, until the date immediately preceding the day each defendant paid its portion of the award to NFO, being July 13, 14 and 15, 1983, respectively.

7. Defendants' renewed joint motion to dismiss NFO's damage claims for lack of standing should be and the same is hereby denied.

8. NFO's alleged failures to comply with the Court's pretrial disclosure orders of NFO's damage theories and underlying facts and data upon which its theories would be based are rendered moot by the Court's determination of the lack of credibility and incompetency of NFO's damage theories and evidence.

9. NFO's motion for interest on the award of attorneys' fees and costs on appeal from August 31, 1982 should be and the same is hereby denied.

10. NFO's motion for clarification of the Court's order requesting nominal damages of One Dollar ($1.00), trebled to Three Dollars ($3.00), should be and the same is hereby denied.

Consideration of taxation of costs and any award of attorneys' fees is deferred until further order of the Court.